OPINION OF THE COURT
 

 Smith, J.
 

 Appellant’s appeal brings two orders of the Appellate Division before this Court for review. The first Appellate Division order, entered March 23, 1993, affirmed an order of the Supreme Court directing that appellant’s answer be stricken unless it posted preanswer security in the amount of $10,351,877.38 pursuant to Insurance Law § 1213 (c) (189 AD2d 217). As to that order, appellant argues that as applied to this case, Insurance Law § 1213 (c) violates the procedural due process guarantees of the Federal Constitution. The second order of the Appellate Division, entered January 12, 1995, affirmed the final judgment entered against appellant (211 AD2d 473). Appellant seeks review of the final judgment and remittal of the case for a new inquest on the ground that relevant evidence pertaining to damages was erroneously excluded at the inquest before the Special Referee. We conclude that Insurance Law § 1213 (c), as applied to defendant, is constitutional, and that the evidence which appellant sought to introduce at the inquest was properly excluded.
 

 
 *271
 
 Facts and Procedural History
 

 Appellant Ardra Insurance Company, Limited is a Bermuda reinsurance company,
 
 [1]
 
 owned and controlled by Richard DiLoreto and Jeanne DiLoreto through their holding company, Tiber Holding Corporation. The DiLoretos also owned and controlled the Nassau Insurance Company (Nassau) (189 AD2d 217, 218,
 
 supra)
 
 which provided various forms of liability and casualty insurance, including policies for medallion taxicabs.
 

 In 1976, Richard DiLoreto decided to create an offshore reinsurance company for the "express purpose of providing reinsurance to Nassau” because Nassau was encountering difficulty obtaining coverage for its medallion taxicab policies from domestic reinsurers. Pursuant to this goal, appellant was incorporated in 1976 and thereafter entered into reinsurance treaties with Nassau.
 
 [2]
 

 In 1984, Nassau was adjudged insolvent and the Superintendent of Insurance of the State of New York was appointed to take possession of Nassau’s assets and liquidate the business
 
 (Matter of Corcoran [Nassau Ins. Co.],
 
 Sup Ct, NY County, June 22, 1984, Cohen, J., index No. 42173/84). Acting as the liquidator of Nassau, the Superintendent of Insurance (Liquidator) commenced an action in April 1985 to recover,
 
 inter alla,
 
 the reinsurance proceeds under three reinsurance treaties between Nassau and appellant.
 
 [3]
 

 One reinsurance treaty, effective as of July 1, 1978 (Agreement I), provided Nassau with coverage for various liability policies, and specifically excluded coverage for policies concerning taxicabs. A second treaty (Agreement II), effective as of January 1, 1980, provided Nassau with excess coverage for policies providing personal injury protection benefits pursuant to New York’s automobile no-fault coverage statute. The third treaty (Agreement III), effective as of December 31, 1979, provided, in relevant part,
 

 "This contract is to indemnify [Nassau] in respect
 
 *272
 
 of the net excess liability * * * which may accrue to [Nassau] as a result of any loss or losses which may occur during the currency of this contract under any and all binders, policies and contracts of reinsurance (hereinafter referred to as 'policies’) heretofore or hereafter issued or entered into by or on behalf of [Nassau] and classified by [Nassau] as excess limits automobile bodily injury business in respect of medallion taxicabs.”
 

 After approximately six years of extensive litigation over the arbitrability of this action and various discovery disputes, appellant served an answer to the complaint in January 1991. The Liquidator responded to the answer by informing appellant’s counsel that the answer would be ineffective unless appellant, an unlicensed alien reinsurer, first provided security, pursuant to Insurance Law § 1213, sufficient to cover the payment of any final judgment which may .be rendered. The Liquidator subsequently made a motion to strike appellant’s answer and to enter a default judgment against appellant.
 

 After hearing oral argument on the Liquidator’s motion, Supreme Court determined that appellant was required to post security before filing its answer. The proceedings were adjourned so that the parties could negotiate the amount of security required. Alternatively, the court informed appellant that it could seek a license to do the business of insurance in New York since licensed insurers were not required to post preanswer security. On May 2, 1991, appellant informed Supreme Court that it had not sought and would not be seeking a license to do the business of insurance in New York State, and that appellant could only post $1 million security. Supreme Court found $1 million inadequate to secure payment of any future final judgment and ordered appellant to post security in the amount of $10,351,877.38 within 45 days
 
 (Curiale v Ardra Ins. Co.,
 
 Sup Ct, NY County, May 2, 1991, Moskowitz, J., index No. 9794/85). The court further ordered appellant’s answer struck if appellant failed to post security
 
 (id.).
 

 Appellant took an interlocutory appeal to the Appellate Division from the May 2, 1991 order, arguing,
 
 inter alla,
 
 that Insurance Law § 1213 was unconstitutional as applied. Appellant claimed deprivation of due process because its inability to post the security required by Supreme Court caused a default and thereby allegedly depriving it of property without a hearing. In an order entered March 23, 1993, the Appellate Division affirmed the Supreme Court, reasoning that appellant had vol
 
 *273
 
 untarily agreed to comply with the conditions of Insurance Law § 1213 when appellant opted to provide reinsurance in New York State without a license (189 AD2d 217,
 
 supra).
 

 Appellant failed to post security and its answer was stricken. Supreme Court subsequently ordered the entry of a default judgment on liability against appellant and referred the case to a Special Referee to determine the amount of paid losses, loss adjustment expenses and statutory interest under Agreements I and III.
 

 During the inquest, appellant did not contest the amount of damages sought under Agreement I but argued that certain claims designated by a P prefix brought by the Liquidator under Agreement III were also covered by reinsurance treaties outside of the complaint. Although appellant conceded that its liability under Agreement III could not be contested, appellant argued that the same claim could not be covered by different reinsurance treaties and that certain P-claims should be excluded as damages.
 
 [4]
 
 The Special Referee ruled that evidence regarding reinsurance treaties outside of the complaint was irrelevant absent a showing that the Liquidator’s claims did not fall under the agreements on which appellant had been adjudged liable. Supreme Court confirmed the Referee’s report, and a final judgment of $16,351,398.11 was entered against appellant on May 17, 1994.
 

 Appellant appealed the final judgment and argued that it had been erroneously foreclosed from presenting relevant evidence on the issue of damages. The Appellate Division concluded that the evidence had been properly excluded from the inquest because appellant’s default had conclusively established all elements of liability, and the Liquidator had presented evidence that the disputed P-claims fell within Agreement III. The final judgment was affirmed by order dated January 12, 1995 (211 AD2d 473,
 
 supra).
 

 Appellant appealed, on constitutional grounds, from the January 12, 1995 order of the Appellate Division, seeking review of the final judgment as well as the March 23, 1993 order (which upheld striking appellant’s answer for failure to post preanswer security pursuant to the Insurance Law). On July 6, 1995, we dismissed that portion of the appeal seeking review of the order affirming the final judgment on the ground
 
 *274
 
 that it did not lie as of right (86 NY2d 774). Thereafter, appellant obtained leave to appeal from the January 12, 1995 order from the Appellate Division, which brought both orders before this Court for review.
 

 Constitutionality of Insurance Law § 1213 (c)
 

 Appellant argues that the entry of a default judgment against a litigant who is financially unable to post the preanswer security in the amount set by a trial court unconstitutionally deprives that litigant of due process of law. Appellant contends that its answer should have been accepted and the merits of the Liquidator’s claims litigated, notwithstanding its failure to post the required security, because its private interest and the risk of an erroneous deprivation of its property outweigh the State interest here. We disagree.
 

 "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty’ or 'property’ interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment”
 
 (Mathews v Eldridge,
 
 424 US 319, 332). The level of procedural protection a State must provide in a particular case is not a " 'technical conception with a fixed content’ ”
 
 (id.,
 
 at 334, quoting from
 
 Cafeteria Workers v McElroy,
 
 367 US 886, 895). Due process is a flexible concept which tailors procedural protections to particular facts. "[N]ot all situations calling for procedural safeguards call for the same kind of procedure”
 
 (Morrissey v Brewer,
 
 408 US 471, 481).
 

 Several factors must be considered in determining the level of procedural protection required.
 

 "[[Identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail”
 
 (Eldridge,
 
 424 US, at 335).
 

 "Due process does not, of course, require that the defendant in every civil case actually have a hearing on the merits”
 
 (Boddie v Connecticut,
 
 401 US 371, 378).
 
 (See, Cohen v Beneficial Loan
 
 
 *275
 

 Corp.,
 
 337 US 541, 552 ["(I)t is within the power of a state to close its courts to (shareholder derivative actions) if the condition of reasonable security is not met”];
 
 Ownbey v
 
 Morgan, 256 US 94 [due process is not violated by requiring nonresident defendants, sued by foreign attachment, to post security as a condition of appearing and defending an action].)
 

 Insurance Law § 1213 (c) provides, in relevant part,
 

 "(1) Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either:
 

 "(A) deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding, but the court may in its discretion make an order dispensing with such deposit or bond if the superintendent certifies to it that such insurer maintains within this state funds or securities in trust or otherwise sufficient and available to satisfy any final judgment which may be entered in the proceeding, or
 

 "(B) procure a license to do an insurance business in this state.”
 

 The purpose of the preanswer security requirement is evident from the statute itself. Alien insurers must maintain sufficient funds in the State to satisfy any potential judgment arising from the policies of insurance (including reinsurance treaties) they issue. Thus, preanswer security may not be required if the Superintendent of Insurance certifies that the alien insurer maintains funds in New York sufficient to satisfy a potential judgment and no security is required if the alien insurer is licensed to do business in New York State. Since insurers, licensed and unlicensed alike, capitalize on the legitimate expectations of the public that funds to satisfy judgments on insurance policies are readily available within the State, the Legislature enacted section 1213 (c) to ensure that those expectations would be met.
 

 "In view of the regulation of financial affairs of insurers, the act of a foreign or alien insurer in issuing and delivering policies, soliciting applications
 
 *276
 
 for insurance, collecting premiums on (and thus keeping in force) existing insurance, or transacting business in such a way that it appears to the public view as a lawful and authorized insurer, is, in a practical sense a holding out or representation
 
 [sic]
 
 to the insured that it conducts its affairs in such a way that funds will be accessible for satisfaction of any judgment based on a claim connected with the contract. The attitude of the public toward insurance has been conditioned by the common acceptance of those standards by insurers who submit to licensing requirements in the several states. In a sense, a foreign or alien insurer who carries on its business in such a way as to evade governmental supervision and the requirements for maintaining funds, while profiting from a common public reliance on the effectiveness of such supervision and requirements, may be said to be estopped to complaim
 
 [sic]
 
 if they are forced upon it” (Mem of NY Law Rev Commn, at 25-26, Bill Jacket, L 1949, ch 826).
 

 The regulation of the insurance industry is closely related to the public interest and a legitimate exercise of a State’s police powers
 
 (Health Ins. Assn. v Harnett,
 
 44 NY2d 302, 308-309). Thus, the State may require that an insurer maintain adequate funds to satisfy a judgment against the policies it has issued in New York State. Appellant concedes that the purpose of the preanswer security requirement in Insurance Law § 1213 (c) is to create a fund to pay judgments, if obtained, but claims that its inability to post the security set by the trial court unconstitutionally deprived it of procedural due process.
 

 The Insurance Law clearly provides notice that preanswer security will be required if an alien insurer chooses to conduct business in New York State without a license. Indeed, section 1101 of the Insurance Law, which defines alien reinsurers as a group which need not obtain a license to conduct the business of insurance in New York State, specifically provides, "but section one thousand two hundred thirteen of this chapter shall nevertheless be applicable to such insurers” (Insurance Law § 1101 [b] [2]).
 

 Under these circumstances, appellant’s claim of poverty is disingenuous, as is appellant’s comparison of preanswer security to court fees which may prove prohibitive for indigent litigants. While the amount of court fees cannot be manipulated
 
 *277
 
 by litigants, the amount of preanswer security is tied directly to the volume of business conducted by the alien unlicensed insurer.
 
 [5]
 
 Since appellant received premiums from a New York insurer in exchange for providing coverage under various reinsurance treaties, appellant cannot now repudiate its obligation to post security for the risks that it has been paid to underwrite.
 

 Appellant’s claim that it has retroceded a portion of Nassau’s premiums to a group of retrocessionaires and is financially unable to post security for losses under its reinsurance treaties merely indicates the true nature of the "property” interest appellant claims is at stake in this appeal. Appellant’s interest can be identified as the ability of an alien insurer (here, a Bermuda corporation) to contest its liability on the insurance policies issued in New York State without ensuring that funds for the risks it has agreed to cover are available in New York State. Thus, appellant would encourage alien insurers, with little or no assets in New York, to conduct a large volume of insurance business in this State at the expense of licensed insurers who must limit their risk to a percentage of their surplus, and maintain certain reserves and deposits (see,
 
 e.g.,
 
 Insurance Law §§ 1115 [limitation of risk], 1303 [maintenance of reserves], 1314-1320 [deposit of securities]). Taken to its logical conclusion, appellant’s position would eviscerate the Legislature’s policy, as embodied in the Insurance Law, of ensuring the availability of funds within the State to pay losses on insurance policies issued here. Such a result is not required by notions of procedural due process, especially since the ability to conduct insurance business free from legitimate government regulation is not a constitutionally protected property or liberty interest.
 

 We conclude that the State’s interest in ensuring the availability of funds from which a judgment against a foreign or alien unlicensed insurer may be promptly paid, instead of requiring claimants to resort to far-flung forums for satisfaction of their judgments, justifies striking the answer of a foreign or alien insurer if that insurer fails to provide adequate preanswer security. Appellant contends that the risk of an erroneous judgment is high when a defendant is defaulted. Nonetheless, the importance of the State interest here outweighs appellant’s interest in litigating the merits of the
 
 *278
 
 Liquidator’s claims without posting preanswer security sufficient to pay any judgment
 
 (see, Trihedron Intl. Assur. v Superior Ct.,
 
 218 Cal App 3d 934, 267 Cal Rptr 418 [holding that requiring unauthorized foreign or alien insurers to post preanswer security does not violate due process];
 
 American Centennial Ins. Co. v Seguros La Republica,
 
 1992 WL 147626 [holding that an order requiring defendant to post preanswer security pursuant to Insurance Law § 1213 did not violate due process];
 
 cf., Ace Grain Co. v American Eagle Fire Ins. Co.,
 
 95 F Supp 784 [holding that the predecessor to Insurance Law § 1213 (c) does not violate equal protection because requiring unauthorized foreign insurers to post preanswer security is a burden already imposed on authorized foreign insurers]).
 

 Appellant’s attempt to equate section 1213 (c) with the prejudgment replevin statutes held violative of procedural due process in
 
 Fuentes v Shevin
 
 (407 US 67) is unpersuasive. The statutes at issue in
 
 Fuentes
 
 permitted agents of the State to seize property in the possession of another (such as a stove, a stereo, furniture, and toys) before a determination on the lawfulness of the possession, and without any notice or opportunity for a hearing at which the party in possession could contest the seizure before it occurred. Unlike the statutes in
 
 Fuentes,
 
 section 1213 (c) does not eífect a seizure of property. The foreign or alien insurer is merely required to post security as a precondition of filing an answer in litigation over policies which the insurer has issued. Moreover, instead of being available at a plaintiff’s option, without any notice to the defendant, Insurance Law § 1213 (c) mandates court supervision before an insurer may be required to post preanswer security, and the obligation to post this security is a regulatory requirement imposed on all unlicensed foreign and alien insurers. Thus, all of the insurers subject to section 1213 (c) are provided with notice and an opportunity to be heard before being subjected to the preanswer security requirement.
 

 Appellant has received all of the due process protections required by the circumstances. As required by statute, the court heard argument on the appropriate amount of preanswer security to be posted by appellant. Within the context of these proceedings, appellant not only vigorously contested the applicability of section 1213 (c) and the amount of security sought by the Liquidator, but was also provided with the opportunity to obtain a license to do business in New York and 45 days to raise the funds to post security. Although appellant contends that the merits of the Liquidator’s claims were never
 
 *279
 
 considered, the trial court reviewed evidence submitted by the Liquidator that appellant entered into three reinsurance treaties with Nassau, and on the magnitude of the losses covered by those treaties, before setting the amount of preanswer security at approximately $10 million. Thus, some consideration was given to the sufficiency of the Liquidator’s claims.
 

 Appellant’s reliance on
 
 Bell v Burson
 
 (402 US 535) is inapposite to the circumstances here. In
 
 Bell,
 
 an uninsured motorist involved in an automobile accident faced suspension of his driver’s license unless he posted security sufficient to cover the amount of damages claimed. The United States Supreme Court held that the uninsured motorist was entitled to a forum for determining whether there was a "reasonable possibility of a judgment being rendered against him as a result of the accident” (402 US, at 542).
 

 The State’s interest in
 
 Bell
 
 was far more attenuated than the State interest here. The basis for the uninsured motorist’s liability, the ability to drive, is not closely connected with that motorist’s ability to pay damages, the reason for the security requirement. Bad driving is not a function of a person’s ability to pay damages. However, an insurer’s ability to pay for the losses incurred under its policies, its liability, is directly linked with the insurer’s ability to post security for the risks it has insured. Finally, unlike the uninsured motorist in
 
 Bell,
 
 who could not foresee the extent of his liability in the event of an accident, appellant was fully aware that its exposure on the reinsurance treaties with Nassau could exceed $10 million. Appellant was not deprived of procedural due process by the application of Insurance Law § 1213 (c) to this case.
 

 Damages
 

 When an answer is stricken and a default entered, the defendant "admits all traversable allegations in the complaint, including the basic allegation of liability, but does not admit the plaintiff’s conclusion as to damages [citation omitted]”
 
 (Rokina Opt. Co. v Camera King,
 
 63 NY2d 728, 730). Consequently, unless the damages are for a sum certain or a sum which can be made certain by computation, the defendant is entitled to a proceeding to establish plaintiff’s real damages
 
 (id.).
 

 The Liquidator presented evidence at the inquest that all of the claims designated with a P prefix were covered under Agreement III. Since appellant’s liability for claims under Agreement III was conceded, appellant’s attempt to introduce
 
 *280
 
 evidence that certain P-claims were
 
 also
 
 covered by other agreements was properly excluded as irrelevant.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . A reinsurer is in the business of indemnifying a primary insurer for losses paid to the primary insurer’s policyholders
 
 (see, Matter of Midland Ins. Co.,
 
 79 NY2d 253, 258).
 

 [2]
 

 . As a reinsurer, appellant was not required to obtain a license in order to conduct insurance business in New York and appellant did not obtain such a license
 
 (see,
 
 Insurance Law § 1101 [b] [2] [G]).
 

 [3]
 

 . The Liquidator also named the DiLoretos as defendants. The DiLoretos commenced a third-patty action against John Tafuro, a former treasurer and assistant treasurer at Nassau. The only defendant involved in this appeal is appellant reinsurer, the Ardra Insurance Company, Limited.
 

 [4]
 

 . Appellant’s counsel argued at the inquest, “I’m trying to show that some other groups of P claims for other years also were covered by treaties other than the two that are in this case.”
 

 [5]
 

 . Consequently,
 
 Boddie v Connecticut
 
 (401 US 371,
 
 supra),
 
 which involved a plaintiff unable to pay court fees for the commencement of a divorce action, is inapposite to the circumstances here.