BRITISH INTERNATIONAL INSURANCE COMPANY LIMITED,
Plaintiff–Appellee,

v.

SEGUROS LA REPUBLICA, S.A.,
Defendant–Appellant.

No. 99–7721.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 26, 2000.
Decided: May 4, 2000.

Cary B. Samowitz, Lord, Bissell & Brook, New York, N.Y. (Michael R. Hassan, R.R. McMahan, Albert E. Fowerbaugh, Jr., Chicago, IL, of counsel), for Defendant–Appellant.

Michael R. O'Donnell, Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ (Shawn L. Kelley, Thomas J. Perry, Debra D. Tedesco, Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ, Peter N. Hillman, Chadbourne & Parke LLP, New York, NY, of counsel), for Plaintiff–Appellee.

Before: VAN GRAAFEILAND, STRAUB, and POOLER, Circuit Judges.

PER CURIAM.

Seguros La Republica ("Seguros") appeals from a default judgment of the United States District Court for the Southern District of New York (John F. Keenan, *Judge*). By a summary order filed concurrently with this opinion, we reject most of Seguros's claims on appeal. In this separate opinion, we address its argument that the security requirement of New York Insurance Law § 1213 violates the defendant's right to due process. For the reasons that follow, we affirm the District Court's order deciding that there was no due process violation. *See American Centennial Ins. Co. v. Seguros La Republica, S.A.,* No. 90 Civ. 2370, 1992 WL 147626 (S.D.N.Y. June 16, 1992) (adopting Magistrate Judge's Report and Recommendation, dated March 23, 1992, and rejecting the defendant's due process challenge to § 1213(c)).

## BACKGROUND

This case arises out of Seguros's alleged failure to pay a predecessor-in-interest of British International Insurance Co. ("BIIC"), American Centennial Insurance Company ("ACIC"), pursuant to twenty-six reinsurance certificates. During the course of the litigation, ACIC moved for an order compelling Seguros to post pre-answer security in accordance with New York Insurance Law § 1213(c)(1)(A), which requires unauthorized foreign or alien insurers, such as Seguros, to post bonds or other security before they are permitted to defend a case on the merits in the New York courts.[1] Because Seguros notified the District Court that it would not post a bond or other security, ACIC filed a motion to strike Seguros's answer, which the District Court granted after a hearing on personal jurisdiction.

After a two-day hearing on damages, the District Court entered a default judgment against Seguros in the amount of $11,801,-024.98. On appeal, Seguros argues, as it did before the District Court, that the security requirement of New York Insurance Law § 1213 violates its right to due process.

## DISCUSSION

Section 1213 of the New York Insurance Law states that its intended purpose is to

> subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts. The legislature declares that it is a subject of concern that many residents of this state

hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such polices.

N.Y. Ins. Law § 1213(a) (McKinney 1985). The statute accomplishes this purpose in two ways: first, by declaring that certain activities on the part of the foreign unauthorized insurer constitute appointment of the New York Superintendent of Insurance as its attorney for service of process, see N.Y. Ins. Law § 1213(b)(1), and second, by mandating that out-of-state insurers post security or obtain a license in order to be allowed to participate in court proceedings in New York, see N.Y. Ins. Law § 1213(c)(1). Seguros challenges this second requirement here.

### I. Applicability of Section 1213 to Reinsurers

Initially, we address § 1213's applicability to the circumstances of this case. Seguros argued in the District Court that § 1213 does not apply to reinsurers because "[r]einsurance contracts ... are merely contracts of indemnity, not policies of insurance." The District Court rejected Seguros's claim, relying on *Morgan v. American Risk Mgmt., Inc.*, No. 89 Civ. 2999, 1990 WL 106837 (S.D.N.Y. July 20, 1990), which in turn relied on the language of another provision of the New York Insurance Law expressly providing that § 1213 applies to those engaged in reinsurance transactions. See N.Y. Ins. Law § 1101(b)(2).[2] Although Seguros does not

---

1. Section 1213(c)(1) specifically provides:
   Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either:
   (A) deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding, but the court

   may in its discretion make an order dispensing with such deposit or bond if the superintendent certifies to it that such insurer maintains within this state funds or securities in trust or otherwise sufficient and available to satisfy any final judgment which may be entered in the proceeding, or (B) procure a license to do an insurance business in this state.
   N.Y. Ins. Law § 1213(c)(1) (McKinney 1985).

2. Section 1101(b)(2) provides in relevant part:

press this claim on appeal, we find it necessary to address the point, as this status resolution underpins the statute's applicability.

We agree with the court in *Morgan*, and those courts adopting its reasoning, that the argument that a reinsurance contract is not a "policy of insurance" or a "contract of insurance" is not sufficient to contravene the express language of § 1101(b)(2). *See Morgan*, 1990 WL 106837, at *6; *accord, e.g., John Hancock Property and Cas. Ins. Co. v. Universale Reinsurance Co. Ltd.*, 147 F.R.D. 40, 50 (1993) (adopting the reasoning of *Morgan* ). Rather, the express language of § 1101(b)(2) demonstrates that "although the legislature recognized that the business of reinsurance was to be distinguished for some purposes from the business of insurance, ... it did not intend that unauthorized reinsurers be exempted from New York's long-arm statute and security requirement." *Morgan*, 1990 WL 106837, at *6.

Finally, Seguros's argument, advanced in the District Court, that this express language is relevant only to the service of process provisions of subsection 1213(b), is without merit. As the District Court concluded, "it makes little sense for the legislature to protect residents by subjecting alien reinsurers to the jurisdiction of the New York courts, but not to the security requirements." *American Centennial Ins. Co. v. Seguros La Republica, S.A.*, Nos. 90 Civ. 2370, 91 Civ. 1235, Report and Recommendation of Magistrate Judge Leonard Bernikow, at 6 (S.D.N.Y. Mar. 23, 1992).

## II. *Due Process Challenge*

Seguros contends that the security requirement at issue is equivalent to a prejudgment attachment of its property and,

under the test set forth by the Supreme Court in *Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), violates its right to due process. BIIC counters that the security requirement does not constitute an attachment and, in any event, complies with the due process requirements set forth by the Supreme Court for such procedures. We hold that the security requirement of § 1213 is the functional equivalent of an attachment, but that it satisfies the due process requirements of *Doehr*.

■ The plaintiff's argument that the security requirement is not an attachment is based largely on the New York Court of Appeals's determination that "section 1213(c) does not effect a seizure of property. The foreign or alien insurer is merely required to post security as a precondition of filing an answer in litigation over policies which the insurer has issued." *Curiale v. Ardra Ins. Co., Ltd.*, 88 N.Y.2d 268, 278, 644 N.Y.S.2d 663, 667 N.E.2d 313 (1996). We respectfully disagree with *Curiale*'s characterization of the security requirement.

First, the Supreme Court has never held that only "complete, physical, or permanent deprivations of real property ... trigger[ ] due process concern." *Doehr*, 501 U.S. at 12, 111 S.Ct. 2105. Rather, its "cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." *Id.* Moreover, we have previously characterized § 1213's security requirement as being equivalent to an attachment because "it would force foreign [insurers] to place some of their assets in the hands of the United States

(2) Notwithstanding [the activities listed in subsection (1) that constitute "doing an insurance business"], the following acts or transactions ... shall not constitute doing an insurance business in this state, but section one thousand two hundred thirteen of this chapter shall nevertheless be applicable to such insurers:

(G) transactions with respect to the reinsurance of risks of authorized insurers to the extent that such reinsurance is permitted by this chapter.

N.Y. Ins. Law § 1101(b)(2) (McKinney 1985).

courts for an indefinite period. During that time, the [insurers] would have no access to those assets. All this is precisely the same result that would obtain if the foreign [insurer's] assets were formally attached." *Stephens v. National Distillers and Chem. Corp.,* 69 F.3d 1226, 1229 (2d Cir.1995). The issue in *Stephens* was whether the provision in the Foreign Sovereign Immunities Act, prohibiting "attachment arrest and execution" of a foreign state's property, 28 U.S.C. § 1609, exempts foreign insurance companies that claim coverage under the FSIA from § 1213's security requirement. While the FSIA is not at issue in the case before us, we believe we are bound by *Stephens*'s characterization of § 1213's security requirement as a prejudgment attachment, especially given the Supreme Court's broad definition in *Doehr* of situations that implicate due process concerns, *see Doehr,* 501 U.S. at 12, 111 S.Ct. 2105. Accordingly, analysis of whether § 1213's security requirement comports with due process— an issue not addressed in *Stephens*—must proceed in light of the conclusion in *Stephens* that this requirement constitutes an "attachment" of the foreign insurance companies' property.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), articulates the traditional balancing test employed by courts to determine whether a government deprivation of an individual's property violates due process. *See Doehr,* 501 U.S. at 10, 111 S.Ct. 2105. The *Mathews* calculus instructs courts to determine the constitutional adequacy of prejudgment attachment procedures by balancing (1) the private interest involved, (2) the risk of an erroneous deprivation of that interest through the procedures utilized, as well as the probable value of additional procedural safeguards, and (3) the government's interest, including the burden that additional procedural requirements would impose. *See Mathews,* 424 U.S. at 325, 96 S.Ct. 893; *United States v. All Assets of Statewide Auto Parts, Inc.,* 971 F.2d 896, 902 (2d Cir.1992).

However, as the Supreme Court pointed out in *Doehr,* the balancing test set forth in *Mathews* directly applies only to cases in which "the government itself seeks to effect a deprivation [of property] on its own initiative." 501 U.S. at 10, 111 S.Ct. 2105. By contrast, cases analyzing traditional prejudgment remedy statutes require application of a slightly altered balancing test, since they "ordinarily apply to disputes between private parties rather than between an individual and the government." *Doehr,* 501 U.S. at 10–11, 111 S.Ct. 2105. In such cases, the first two factors remain the same as under *Mathews,* but the third factor, instead, requires "principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interests the government may have in providing the procedure or forgoing the added burden of providing the greater protections." *Id.* at 11, 111 S.Ct. 2105. This alteration is warranted because "any burden that increasing procedural safeguards entails primarily affects not the government, but the party seeking control of the other's property." *Id.* As the Court specifically held in *Doehr,* "[t]he State's substantive interest in protecting any rights of the plaintiff cannot be more weighty than those rights themselves." *Id.* at 16, 111 S.Ct. 2105. Therefore, in cases where the plaintiff's interest is "*de minimis,*" the government's interest will not be significant enough to overcome due process concerns. *Id.*

In the case before us, the District Court held that the security requirement of § 1213 is "readily distinguishable" from "traditional prejudgment creditors' remedies." Similarly, relying largely on *Curiale,* BIIC argues that § 1213 is constitutional because it is distinguishable from traditional prejudgment creditors' remedies that have been held to violate due process in certain cases. *See Curiale,* 88 N.Y.2d at 278, 644 N.Y.S.2d 663, 667 N.E.2d 313. The key distinction, both for

the District Court and the court in *Curiale,* lies primarily in the importance of "the State's interest in ensuring the availability of funds from which a judgment against a foreign or alien unlicensed insurer may be promptly paid, instead of requiring claimants to resort to far-flung forums for satisfaction of their judgments," given that "insurers, licensed and unlicensed alike, capitalize on the legitimate expectations of the public that funds to satisfy judgments on insurance policies are readily available within the State." *Curiale,* 88 N.Y.2d at 275, 277, 644 N.Y.S.2d 663, 667 N.E.2d 313; *see also* Jt.App. at 81–82 ("In the creditor's remedies cases the state has no substantial interest to protect in providing plaintiffs with a prejudgment financial advantage over defendants. The state in the instant case has an interest in protecting its insureds and beneficiaries.") (internal quotation marks and citation omitted).

This conclusion, though correct, requires further explanation. As Seguros points out, under Supreme Court jurisprudence, the government's interest generally is not dispositive in cases where the deprivation of property results from a private individual—rather than the government itself—making use of government procedures. *See Doehr,* 501 U.S. at 10–11, 111 S.Ct. 2105. However, Seguros's argument goes too far. *Doehr* does not indicate that the government's interest is inconsequential in cases where a private individual, as opposed to the government, acts. Rather, *Doehr* concludes that the government's interest can be no greater than that of the private litigant seeking attachment. *See Doehr,* 501 U.S. at 16, 111 S.Ct. 2105. In *Doehr,* the "plaintiff's interest [was] *de minimis.*" *Id.* In the instant case, by contrast, New York State shares with its citizens a significant interest in ensuring that businesses in the heavily regulated insurance industry have sufficient funds within the state where they conduct business to fulfill each individual insurance claim. In short, the State interest at stake in the enactment of § 1213's security re-

quirement is far more substantial than that involved in the enactment and enforcement of traditional prejudgment attachment statutes, because it reflects the collective importance of the regulation to each of its citizens.

Furthermore, § 1213's security requirement passes constitutional muster under the first two prongs of the *Mathews–Doehr* balancing test, as *Curiale* persuasively makes clear. First, in terms of the private interest involved, § 1213's security requirement, as discussed above, does deprive a foreign insurer of a significant property interest that implicates due process concerns. However, the insurer has an alternative means available to protect its property: it will be excused from the requirement if it obtains a license to do an insurance business in New York. *See* N.Y. Ins. Law § 1213(c)(1)(B). Thus, in reality the security requirement is simply a means of avoiding state licensing requirements, a right the insurer does not have. *See Curiale,* 88 N.Y.2d at 277, 644 N.Y.S.2d 663, 667 N.E.2d 313 ("[T]he ability to conduct insurance business free from legitimate government regulation is not a constitutionally protected property or liberty interest.").

Second, there is little risk of an erroneous deprivation of an insurer's property rights and there are significant additional procedural safeguards. Unlike most prejudgment security statutes, § 1213 is not "available at a plaintiff's option, without any notice to the defendant," but is a "regulatory requirement imposed on all unlicensed foreign and alien insurers" and "mandates court supervision before an insurer may be required to post preanswer security." *Curiale,* 88 N.Y.2d at 278, 644 N.Y.S.2d 663, 667 N.E.2d 313; *see also* § 1213(c)(1)(A). Thus, all insurers subject to § 1213(c) are "provided with notice and an opportunity to be heard before being subjected to the preanswer security requirement." *Curiale,* 88 N.Y.2d at 278, 644 N.Y.S.2d 663, 667 N.E.2d 313; *cf.*

*Doehr,* 501 U.S. at 14–16, 111 S.Ct. 2105 (concluding that a prejudgment attachment of real property without prior notice was unconstitutional); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (finding unconstitutional state replevin provisions that permitted vendors to have goods seized through an *ex parte* application to a court clerk and the posting of a bond); *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (striking down statute that permitted a creditor to effect prejudgment garnishment of wages without notice to the wage earner or prior hearing).[3]

Finally, though not raised by Seguros, the fact that § 1213 does not require the posting of a security bond by the plaintiff in the event that the attachment ultimately is found to have been erroneously made does not render the statute unconstitutional in this Circuit. We specifically have stated that "because only a plurality of the Justices addressed this issue in *Doehr,* this Circuit has continued to adhere to our previously established position that a security bond need not be posted in connection with a prejudgment attachment in order to satisfy the requirements of due process." *Result Shipping Co. v. Ferruzzi Trading USA Inc.,* 56 F.3d 394, 402 (2d Cir.1995).

Accordingly, though we agree with Seguros that the security requirement of § 1213 is properly characterized as a prejudgment attachment, we conclude that it comports with due process.

## CONCLUSION

For the foregoing reasons, we affirm the District Court's order deciding that there was no due process violation in applying the security requirement of New York Insurance Law to Seguros.

---

**3.** We need not reach the issue of whether, absent notice and court supervision, § 1213 would violate due process. We note, however, that BIIC's essential claim—that Seguros owes it a sum of money under a set of contracts—appears to fall into the category of cases cited in *Doehr* as "lend[ing] themselves to accurate *ex parte* assessments of the merits," since they "concern ordinarily uncompli-cated matters that lend themselves to documentary proof." 501 U.S. at 14, 17, 111 S.Ct. 2105 (internal quotations omitted); *see also Shaumyan v. O'Neill,* 987 F.2d 122, 126–27 (2d Cir.1993) (upholding a Connecticut statute permitting *ex parte* prejudgment attachment of a home in part because it involved "an outstanding sum certain due under [a] contract").