[662 NYS2d 450]

In the Matter of REUTERS LIMITED et al., Respondents, v Dow
JONES TELERATE, INC., Appellant.

First Department, September 4, 1997

### APPEARANCES OF COUNSEL

*Naomi Jane Gray* of counsel, New York City *(Weil, Gotshal & Manges, L. L. P.,* attorneys), for respondents.

*Robert P. LoBue* of counsel, New York City *(Patterson, Belknap, Webb & Tyler, L. L. P.,* attorneys), for appellant.

### OPINION OF THE COURT

ELLERIN, J. P.

At issue on this appeal is the permissible scope of a subpoena duces tecum issued by arbitrators to a nonparty to the arbitration.

Petitioners Reuters Limited and Reuters, S.A. (collectively Reuters) and respondent Dow Jones Telerate, Inc. (Dow) are the two largest distributors, by electronic means, of "real time" financial news to financial market professionals, and are ardent competitors. The underlying arbitration giving rise to this special proceeding involves a contract dispute between Reuters and Cantor Fitzgerald, L.P. and Market Data Corporation (collectively Cantor). Cantor is a major inter-dealer/broker of financial securities, including United States Treasury, international and domestic municipal securities, and has been providing its brokered prices of United States Treasury securities to Dow for 30 years.

In 1993, Cantor entered into an agreement with Reuters to provide it with brokered prices of international government bonds and municipal securities. In the underlying arbitration between Reuters and Cantor that arises from that contract, Reuters contended that Cantor defaulted on its promise to resist opposition by its customers to the "transparency" of their bids and other trading information, i.e., the widespread dissemination of such information over Reuters' computer network, and that, as a response to those protests, Cantor repeatedly breached its contract with Reuters by withholding large amounts of information through a practice called "off-screen trading".

Cantor asserted in the arbitration that its contract with Reuters does not require that Cantor provide data that is not captured electronically by Cantor's screen system, that the practice of "off-screen trading" is well known in the financial industry and that Cantor's contract with Reuters was modeled upon Cantor's contractual relationship with Dow for United States Treasury securities data, pursuant to which Cantor has regularly and permissibly engaged in off-screen trading of such securities and thereby withheld that data from Dow.

In response, the arbitrators ordered that, if Cantor were going to argue a defense based on its practices with Dow, Cantor was required to provide Reuters with documents reflecting that relationship and practices. The panel also issued a subpoena duces tecum to Dow, a nonparty to the arbitration, demanding that it produce "[a]ll documents", including those stored via "computer, digital, electronic, optical or magnetic storage media, tape or other recordings, e-mail, audio, or video means"

"1. * * * relating to or reflecting proposed or actual efforts, strategy or tactics to respond to the resistance of [Cantor's]

trading customers to the dissemination of Brokerage Information on U.S. Treasury Securities and to bring about transparency in the U.S. Treasury market. This request is directed at both the dissemination of U.S. Treasury Brokerage Information to the broker-dealer community via computer (the speed screen system or its predecessor[s]) and successor(s), as well as the dissemination of U.S. Treasury Brokerage Information to the non-dealer financial community.

"2. All documents relating to or reflecting the existence, amount, reasons for, significance and/or impact of off-screen trading in U.S. Treasury Securities.

"3. All documents relating to or reflecting disputes, disagreements, communications, plans, strategies, tactics or suspicions regarding the scope, content, sufficiency, completeness, accuracy, genuineness, timeliness, and/or manner of presentation (e.g., whether the data is properly indexed and/or is made difficult to find or use) of the U.S. Treasury Brokerage Information provided by [Cantor] to, or through, [Dow].

"4. All documents relating to or reflecting the proposed sale or license between [Cantor] and [Dow] of [Cantor's] Brokerage Information for [international government bonds] and/or U.S. Municipal Securities."

The subpoena provided Dow with less than two days to go through 30 years of documents, including e-mail, computer data, etc., to determine which of them related to its efforts, strategy or tactics regarding transparency or to the existence, amount, reasons for, significance and/or impact of off-screen trading in United States Treasury securities.

Dow advised the arbitrators that the documents requested of it were irrelevant to the arbitration, and contained highly sensitive matter, which Reuters, its foremost competitor, could use to its commercial advantage, and that the requests were "vague and ambiguous and absurdly overbroad, especially given that the subpoena seeks documents from a non-party".

Reuters commenced the instant proceeding to compel Dow to comply with the subpoena. The IAS Court granted the motion to compel production, but held that Dow was entitled to a Referee to be appointed by the American Arbitration Association or that Dow could choose, in lieu of a Referee, to have Reuters and Cantor execute a confidentiality agreement.

The ability to compel the production of evidence is "essential to the very existence of a court of justice in any civilized community" (*Matter of Makames [Johnson]*, 238 App Div 534, 536).

Moreover, there is no question that arbitrators, who are entrusted with deciding an increasing number of disputes in our society, are among those who are statutorily authorized to issue subpoenas, whether ad testificandum or duces tecum (CPLR 2302 [a]; 7505; *see, Matter of Minerals & Chems. Philipp Corp. [Panamerican Commodities]*, 15 AD2d 432, *appeal dismissed* 11 NY2d 1109). There is, however, an essential difference between a subpoena issued in the context of an arbitration and one issued in the context of a litigated matter, in that the former is a nonjudicial subpoena. In the case of judicial subpoenas, including those issued by an attorney of record in a matter pending before a court, a person who fails to comply, without making a motion to quash, runs the risk of being held in contempt based directly on that failure (4 Weinstein-Korn-Miller, NY Civ Prac ¶ 2308.01a; Judiciary Law § 750 [A] [3]; § 753). In distinction, a person who is served with a nonjudicial subpoena cannot be held in contempt for failure to comply unless and until a court has issued an order compelling compliance, which order has been disobeyed (*Dias v Consolidated Edison Co.*, 116 AD2d 453, 454). Thus, there is no need to move to quash such a subpoena in order to avoid sanctions, and one who is served and does not wish to comply may safely wait until the party who served the subpoena moves to compel compliance.

While the difference between a judicial and nonjudicial subpoena is significant in regard to the availability of, and procedural course for, sanctions, there is no significant difference with respect to evaluating the substantive grounds for deciding either a motion to compel compliance with or to quash a subpoena, which present essentially identical substantive issues, albeit that they are brought by a different party with a different perspective (*see, Matter of Friedman v Hi-Li Manor Home for Adults*, 42 NY2d 408, 413). Among those grounds is the contention that the documents sought are not relevant to the issues extant before the tribunal, whether that tribunal be a panel of arbitrators, a court, a legislative or administrative board of inquiry, a Grand Jury, or other such entity.

It is frequently opined that a motion to quash on relevancy grounds will be denied as long as the party issuing the subpoena duces tecum can show that the materials sought are not "utterly irrelevant" to the matter at hand (*General Elec. Co. v Rabin*, 184 AD2d 391, 392; *Westhoff v Bear Stearns & Co.*, 180 AD2d 543; *Ayubo v Eastman Kodak Co.*, 158 AD2d 641, 642; *Matter of La Belle Creole Intl. v Attorney-General of State*

*of N. Y.*, 10 NY2d 192, 196).* However, this broadly stated standard, while consistent with a policy favoring the production of information, should not serve as an excuse for a court to abdicate its responsibility to determine whether the materials sought are in fact relevant to a legitimate subject of inquiry (*see, Matter of A'Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers' Assn.*, 23 NY2d 916, 918, *cert denied* 395 US 959; *Matter of Minerals & Chems. Philipp Corp. [Panamerican Commodities]*, 15 AD2d, *supra*, at 433; *Matter of Hirshfield v Craig*, 239 NY 98, 118) or to permit the subpoena power to be used as a tool of harassment or for the proverbial "fishing expedition" to ascertain the existence of evidence (*People v Gissendanner*, 48 NY2d 543; *Oak Beach Inn Corp. v Town of Babylon*, — AD2d —, 1997 NY Slip Op 04781 [2d Dept, May 27, 1997]; *Franklin v Judson*, 96 App Div 607). This is of special significance where the subpoena is issued in the context of a civil dispute between private parties, where the issues before the tribunal are necessarily limited to those affecting the specific dispute. A broader view of relevance may be applied when the subpoena is issued by an administrative or legislative investigatory body, since the relevance of such an "office subpoena" depends on the authorized breadth of the investigation itself (*see, e.g., Matter of La Belle Creole Intl. v Attorney-General of State of N. Y.*, *supra*, at 196-197).

Here, Reuters argues that the information that is sought from Dow is relevant and necessary to disprove Cantor's argument that, when Cantor and Reuters entered into their contract, which was modeled on its contract with Dow, they intended that Cantor would be permitted to do off-screen trading even though that would make certain bidding information unavailable to Reuters. Reuters' argument that Dow's internal information is relevant to this dispute is apparently based on the supposition that Dow's files will reveal that Dow never believed that off-screen trading was permissible, that Cantor

---

* Grand Jury subpoenas are evaluated by a particularly generous standard, i.e., they " ' "are presumptively valid and can only be challenged by an affirmative showing of impropriety * * * [or] bad faith" ' " (*Virag v Hynes*, 54 NY2d 437, 442-443; *Matter of Additional Jan. 1979 Grand Jury v Doe*, 50 NY2d 14, 20) or if the party seeking to quash can "demonstrate 'that a particular category of documents can have no conceivable relevance to any legitimate object of investigation by the * * * grand jury' " (*Virag v Hynes*, *supra*, at 444, quoting *In re Horowitz*, 482 F2d 72, 80, *cert denied* 414 US 867; *see also, Matter of Dairymen's League Coop. Assn. v Murtagh*, 274 App Div 591, 595, *affd* 299 NY 634 [subpoena issued by Commissioner of Investigation of the City of New York]).

knew this and that Cantor cannot therefore contend that it blithely entered into the agreement with Reuters unaware that off-screen trading would be a problem.

■ This argument is infirm on two grounds. First, there is simply nothing in the record to show that the arbitrators have been provided with any evidence that the Reuters-Cantor agreement was in fact "modelled" on the earlier Dow-Cantor agreement other than a bare assertion by Cantor to that effect. Moreover, even if there were evidence that the parties modelled the Reuters-Cantor agreement on the Dow-Cantor agreement, thereby rendering Cantor's understanding of the Dow agreement arguably relevant, any documents reflecting Cantor's belief as to whether off-screen trading was permissible under the Dow agreement would certainly be in Cantor's, rather than Dow's, possession.

Reuters tries to counter this conclusion by arguing that Dow's position vis-à-vis the Cantor-Dow agreement is also significant because if Dow believed that off-screen trading were a breach of that agreement, Cantor can hardly pretend that it was unaware that off-screen trading would be a bone of contention when it entered into the Reuters agreement. However, any documents that would demonstrate that Cantor was aware that Dow believed that off-screen trading was not permitted under their agreement would also be in Cantor's possession. Any information in Dow's possession that was never communicated to Cantor would clearly be irrelevant to the only issue arguably extant here, i.e., Cantor's intent when it entered into the Reuters agreement.

Nor is the information that is sought relevant to refute Cantor's argument, in the arbitration, that the practice of withholding information by off-screen trading is common in the industry and that its contract must be interpreted in accordance with that common trade usage. One who seeks to use trade usage to define language or annex a term to a contract must show either that the other party to the contract is actually aware of the usage, or that the existence of the usage in the business to which the transaction relates is so notorious that a person of ordinary prudence in the exercise of reasonable care would be aware of it (see, Fowler v Brantly, 14 Pet [39 US] 318, 320; Matter of Gerseta Corp. [Silk Assn.], 220 App Div 293, 295). As this Court noted in Schlanger v Heyman (185 App Div 599, 600), the defense of trade usage is not admissible to " 'influence the construction of a contract unless it appears that it be so well settled, so uniformly acted upon, and so long

continued as to raise a fair presumption that it was known to both contracting parties and that they contracted in reference thereto' * * * '[T]hat one party had knowledge of the usage, and supposed that it would enter into the contract, is not sufficient.' " (Citations omitted.) On this record, Reuters cannot show that the confidential files of its major competitor, Dow, would be relevant or necessary to disprove the existence of a well-settled, uniformly-acted-upon and long-continued usage. Clearly, only publicly disseminated information about the practices of other parties in the industry would be eligible to either establish or disprove the necessary elements of such a defense. Thus, the documents sought are not necessary or relevant to prove, or disprove, the theory raised in the arbitration.

█ Moreover, even were Reuters able to establish the validity of its underlying contention that there is a legitimate relationship between documents possessed by Dow demonstrating its position regarding off-screen trading and the issues before the arbitrator, which it has clearly failed to do, the subpoena as it stands would still be unenforceable because the document requests are patently overbroad, burdensome and oppressive (*cf., Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608*, 72 NY2d 307, 315-316, *cert denied* 488 US 966). While " '[r]elevancy, and not quantity, is the test of the validity of a subpoena' " (*Matter of American Dental Coop. v Attorney-General of State of N. Y.*, 127 AD2d 274, 282-283, quoting *Matter of Minuteman Research v Lefkowitz*, 69 Misc 2d 330, 331), and a subpoena will not be denied enforcement merely because it seeks a large number of documents, it is clear that everything sought must meet the relevancy standard and the subpoena must set forth what is sought with some degree of clarity. The subpoena at issue here does not merely call for the files of specific officers of the company or for documents regarding limited or specifically defined subjects, but instead would require at least preliminary review of all files of all persons at Dow who have dealt with Cantor, its principal supplier of data, to determine whether any such person ever harbored a "suspicion" as to the completeness of the data delivered to Dow by Cantor.

Finally, we cannot ignore the fact that Dow and Reuters are competitors, both of whom obtain significant amounts of the information that they supply to their own customers from the same supplier, Cantor. The subpoena at issue, while providing *no* apparent prospect of yielding information of actual use to either party in the arbitration, brings with it a real risk of

disturbing the relationship between Dow and Cantor and putting Dow at a competitive disadvantage. Moreover, it is difficult to understand how, under the circumstances here present, a confidentiality agreement would afford any meaningful protection to Dow, since its most pressing need for confidentiality is vis-à-vis its major competitor, Reuters.

Since it has been demonstrated that the information Dow was ordered to produce is neither relevant nor necessary to the resolution of the issues before the arbitrators and that its production would be unduly burdensome, the Court erred in directing compliance with the arbitrators' subpoena.

Accordingly, the order of the Supreme Court, New York County (William Davis, J.), entered December 16, 1996, which granted the motion by petitioners Reuters Limited and Reuters, S.A. to compel respondent Dow Jones Telerate, Inc. to comply with a nonjudicial subpoena duces tecum, should be reversed, on the law, with costs, and the motion denied.

NARDELLI, RUBIN and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered December 16, 1996, reversed, on the law, with costs, and the motion by petitioners to compel respondent to comply with a nonjudicial subpoena duces tecum denied.