### BRITISH INTERNATIONAL INSURANCE COMPANY LIMITED, Plaintiff–Appellant,

v.

### SEGUROS LA REPUBLICA, S.A., Defendant–Appellee.

**Docket No. 01–9079.**

United States Court of Appeals, Second Circuit.

Argued: June 11, 2003.

Decided: Aug. 26, 2003.

Michael R. O'Donnell (Shawn L. Kelly, Thomas J. Perry, of counsel), Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ, for Plaintiff-Appellant.

Lawrence W. Newman (Charles B. Cummings, of counsel), Baker & McKenzie, New York, NY, for Defendant-Appellee.

Before: MINER, JACOBS, and CABRANES, Circuit Judges.

JACOBS, Circuit Judge.

This reinsurance coverage dispute returns to us following a remand. Defendant-Appellee Seguros La Republica, S.A. ("Seguros") issued 26 facultative certificates reinsuring risks underwritten by American Centennial Insurance Company ("ACIC"). ACIC's successor, Plaintiff-Appellant British International Insurance Company Limited ("BIIC"), sued Seguros for pro rata reimbursement of sums paid by ACIC on behalf of the underlying insureds and for declaratory judgment expenses incurred by ACIC in coverage disputes over the underlying contracts of insurance. The district court entered a default judgment in favor of BIIC in the amount of $11,801,024.98. We affirmed in part, and in part vacated and remanded. *See British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 212 F.3d 138 (2d Cir. 2000) (per curiam); *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, No. 99-7721, 212 F.3d 625, 2000 WL 553188, 2000 U.S. App. LEXIS 8862 (2d Cir. May 4, 2000) (unpublished summary order). The remand contemplated further proceedings on two issues: (1) whether Seguros is liable for the declaratory judgment expenses incurred by ACIC in coverage disputes over the underlying contracts of insurance; and (2) whether BIIC had presented any proof as to a $52,987.22 component of its claim. *Id.* at 80.

On remand, the district court granted summary judgment in favor of Seguros on the issue of declaratory judgment expenses, and entered final judgment on Au-

gust 13, 2001. BIIC appeals from so much of the judgment as denies declaratory judgment expenses.[1]

## BACKGROUND

Between 1977 to 1980, Seguros issued 26 facultative certificates to ACIC, BIIC's predecessor in interest. Essentially identical language in each certificate provides that Seguros will indemnify BIIC (up to a specified amount) "[o]n [BIIC's] interest as insurer under" a specified insurance contract issued to a specified insured.[2] The following "Reinsurance Clause" is attached to each certificate:

> This Certificate of Reinsurance is subject to the same risks, valuations, conditions, endorsements (except changes of location), assignments and adjustments as are or may be assumed, made or adopted by the reinsured, and loss, if any, hereunder is payable pro rata with the reinsured and at the same time and place . . . .

Following Seguros' refusal to pay BIIC's reinsurance claim, BIIC commenced this diversity action in April 1990. BIIC sought (1) a judgment against Seguros for breach of contract, account stated, and monies due and owing, and (2) a declaration that Seguros is obligated to pay accounts that come due under the facultative certificates in the future. Seguros failed to post pre-answer security as required under New York Insurance Law § 1213(c)(1)(A), and on May 18, 1999, the district court entered a default judgment in favor of BIIC in the amount of $11,801,024.98.

On appeal, our opinion rejected Seguros' argument that section 1213(c)(1)(A) violated constitutional due process. *See British Int'l Ins. Co.*, 212 F.3d at 141–44. An unpublished summary order, issued simultaneously, directed the district court to address two discrete issues on remand, of which one is contested on this appeal: whether Seguros is obligated to pay a pro rata share—$630,736.46—of declaratory judgment expenses incurred by BIIC in litigating coverage disputes with its policyholders. *See British Int'l Ins. Co.*, 2000 U.S.App. LEXIS 8862, at *4–*5.

On remand, the district court granted summary judgment in favor of Seguros. *See British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 2001 WL 897180, **2–3, 2001 U.S. Dist. LEXIS 11453, at *6–*11 (S.D.N.Y. Aug. 8, 2001) (unpublished opinion and order). The court observed that the facultative certificates are silent as to declaratory judgment expenses, and concluded that the provision in the Reinsurance Clause (subjecting Seguros "to the same risks" as BIIC) unambiguously omitted declaratory judgment costs because BIIC's "underlying insurance policies did not subject [BIIC] to the 'risk' of having to reimburse its own declaratory-judgment expenses." *Id.* at *2, 2001 U.S. Dist. LEXIS 11453 at *7. Concluding that the wording is unambiguous, the court ruled that trade practice as to the reimbursement of declaratory judgment expenses was irrelevant. *Id.* at *2, 2001 U.S. Dist. LEXIS 11453 at *8. The court nevertheless reviewed two expert affidavits submit-

---

**1.** Seguros has not cross-appealed from the portion of the judgment finding that BIIC presented sufficient evidence of the disputed $52,987.22, and its decision is unsurprising. After the summary judgment proceedings, BIIC informed the court that the disputed amount was incurred in declaratory judgment proceedings, and thus Seguros is not obligated to pay that amount based on the court's

ruling that declaratory judgment expenses are not covered by the facultative certificates.

**2.** For example, one certificate memorialized Seguros' obligation to indemnify BIIC (up to a specified amount) "[o]n [BIIC's] interest as insurer under its Umbrella liab[ility policy] . . . issued to Dow Chemical Co."

ted by BIIC to show that at the time the facultative certificates in this case were issued, reinsurers typically reimbursed their reinsureds' declaratory judgment expenses. The court discounted the affidavits on the (further) basis that they did not show that this practice of reimbursement was "due to an industry-wide interpretation of any particular term [in the certificate], such as 'risk,' that was commonly used in reinsurance certificates at that time." *Id.* at **2–3 & n. 2, 2001 U.S. Dist. LEXIS 11453 at *8–*9 & n. 2.

The district court also rejected BIIC's argument that the follow-the-fortunes doctrine—which, *inter alia,* bars a reinsurer's challenge to a good faith settlement reached by its reinsured on an underlying claim—should be extended to require a reinsurer to pay the reinsured's expenses in litigation concerning the underlying insurance coverage. *Id.* at **2–3, 2001 U.S. Dist. LEXIS 11453 at *9–*11.

BIIC now appeals on the grounds (1) that the facultative certificate is ambiguous; (2) that then-prevailing custom in the industry required the reinsurer to pay a pro rata share of the cedent's expense in resisting coverage; and (3) that such payment is compelled by the reinsurance doctrine requiring the reinsurer to follow the fortunes of the cedent.[3]

## DISCUSSION

"We review a district court's grant of summary judgment *de novo.*" *Young v. County of Fulton,* 160 F.3d 899, 902 (2d Cir.1998). In doing so, we construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ma-*

*guire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

### I

BIIC does not argue that any provision of the facultative certificates expressly requires pro rata payment of declaratory judgment costs. On appeal, as below, BIIC relies on the provision of the Reinsurance Clause that Seguros is "subject to the same *risks,* valuations, conditions, and endorsements ... as may be assumed or adopted by [BIIC], and loss, if any hereunder," (emphasis added), and identifies the word "risks" as the source of ambiguity that could cover declaratory judgment expenses. BIIC emphasizes the cumulative force of the word "risks" in the context of the words that follow it: "valuations, conditions, and endorsements ... as may be assumed or adopted by [BIIC], and loss, if any hereunder." Arguing that the provision as a whole is ambiguous, BIIC contends that this ambiguity must be resolved by resorting to industry custom. This is an expansion of the argument made in the district court, but we deem that it is within the scope of that argument and is therefore preserved.

■ The parties agree that New York law governs this diversity case; their "consent concludes the choice of law inquiry." *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir.1997). New York law enforces reinsurance contracts without resort to the *contra proferentem* rule that is sometimes used in the context of direct insurance. *See Unigard Sec. Ins.*

3. BIIC also argues—without basis—that certain language in the district court's Opinion and Order "implicitly acknowledges an ambiguity" in the facultative certificates.

*Co. v. N. River Ins. Co.*, 4 F.3d 1049, 1064–65 (2d Cir.1993) ("[R]einsurers are so dependent upon ceding insurers for information, that application of a canon construing the reinsurance contract against the reinsurer would be highly anomalous."). The facultative certificates at issue will therefore be construed as we would construe any ordinary contract. *See id.*

■ "Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir.1992). "Where ... the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *Rainbow v. Swisher*, 72 N.Y.2d 106, 109, 531 N.Y.S.2d 775, 527 N.E.2d 258 (1988). Conversely, "[i]f the court finds that the terms, or the inferences readily drawn from the terms, are ambiguous, then the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Alexander & Alexander Servs., Inc. v. Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir.1998). "An ambiguity exists where the terms of a contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* (quoting *Lightfoot v. Union Carbide Corp.*,

110 F.3d 898, 906 (2d Cir.1997)). "The determination of whether a contract term is ambiguous is a threshold question of law for the court." *Walk–In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987).

■ BIIC contends that the Reinsurance Clause language—subjecting Seguros "to the same risks, valuations, conditions, and endorsements ... as may be assumed or adopted by [BIIC], and loss, if any hereunder"—read as a whole, is incapable of being understood without resort to industry custom: "[t]he only way to understand this phrase is to look at the custom and practice of the reinsurance industry at the time [Seguros] drafted the Facultative Certificates." Appellant's Br. at 22. A party relying on ambiguity is normally obligated to show that a word, phrase, or provision "could suggest more than one meaning." *Alexander & Alexander Servs.*, 136 F.3d at 86 (internal quotation marks omitted); *see also Walk–In Med. Ctr.*, 818 F.2d at 264 ("Because the term 'adverse market conditions' was susceptible of at least two reasonable interpretations, [the district court] correctly determined that the term's meaning was a genuine issue of fact ...."). Here, BIIC does not propose multiple meanings of which one favors its claim; instead, BIIC pronounces that the language is so broad as to be impossible to interpret without resort to industry custom. We are not persuaded that this argument sufficiently establishes an ambiguity useful to BIIC.[4]

■ The leading case on the use of industry custom in a reinsurance dispute

---

4. We are aware that the question of whether an ambiguity exists is answered from the point of view of someone who, *inter alia*, "is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Alexander & Alexander Servs.*, 136 F.3d at 86 (internal

quotation marks omitted); *see also Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 87 n. 4 (2d Cir.2002). But, BIIC fails to link any wording in the Reinsurance Clause to a custom, practice, or usage in the reinsurance industry.

over declaratory judgment expenses is *Affiliated FM Insurance Co. v. Constitution Reinsurance Corp.*, 416 Mass. 839, 626 N.E.2d 878 (1994). The trial court had granted summary judgment to the reinsurer on the ground that the particular facultative certificates unambiguously failed to require the payment of such expenses. In vacating that ruling, the Supreme Judicial Court of Massachusetts focused on the following provision: "In addition ..., the Reinsurer shall pay its proportion of expenses [other than office expenses and payments to any salaried employee] incurred by the [Reinsured] in the investigation and settlement of claims or suits ...." *Id.* at 841 n. 4, 626 N.E.2d 878 (first alteration in original). The court held that the term "expenses" was ambiguous because in context it could include either the expenses covered in the underlying insurance policy, or the expenses incurred by the cedent in coverage disputes with the insured, or both. *See id.* at 844–45, 626 N.E.2d 878. The court therefore ruled that the trial court should have consulted industry custom and practice to determine the scope of the term "expenses." *Id.* at 845–6, 626 N.E.2d 878.

*Affiliated FM* is most easily distinguished here on the basis that the word "expenses"—held to be ambiguous in *Affiliated FM*—does not appear in the Seguros facultative certificates. More generally, *Affiliated FM* supports the view that a party seeking to establish ambiguity must articulate multiple meanings that the contract language will sustain.

Similarly, in *Employers Reinsurance Corp. v. Mid–Continent Casualty Co.*, 202 F.Supp.2d 1221 (D.Kan.2002), the rein-

sured recovered its declaratory judgment costs on the basis of the phrase "claims expenses" and the contract's definition of that term, *id.* at 1235–37—neither of which appears in the Seguros facultative certificates.

BIIC argues for the first time on appeal that the word "loss" is ambiguous because it could include declaratory judgment expenses. This argument was not considered by the district court and we decline to exercise discretion to hear it on appeal. *See Mattel, Inc. v. Barbie–Club.com*, 310 F.3d 293, 306 (2d Cir.2002).

We conclude that BIIC has failed to articulate any ambiguity in the terms of these facultative certificates.

## II

Seguros contends, and the district court agreed, that the certificates unambiguously limit reinsurance coverage to the risks specified in BIIC's policies with its policyholders. BIIC argues that even in the absence of ambiguity on that score, industry custom and practice may be used to supplement the terms expressed in the contract.[5] BIIC's brief does not formulate the circumstances in which a term may be thus implied, or why this case requires that result; however, we conclude that the record evidence of custom and practice is insufficient to raise the legal issue.

"[T]he burden of proving a trade usage has generally been placed on the party benefiting from its existence." *Putnam Rolling Ladder Co. v. Mfrs. Hanover Trust Co.*, 74 N.Y.2d 340, 348, 547 N.Y.S.2d 611, 546 N.E.2d 904 (1989).

---

5. We conclude that this issue is properly presented on appeal, though that is a close question. BIIC argued to the district court that Seguros is liable for BIIC's declaratory judgment expenses because of the purported industry custom of reinsurers paying these expenses. Although there is no evidence that BIIC specifically framed the issue for the court as one of adding contract terms, we determine that the argument was sufficiently before the district court.

"Under New York law, ... custom and usage evidence must establish that the omitted term is 'fixed and invariable' in the industry in question." *Hutner v. Greene*, 734 F.2d 896, 900 (2d Cir.1984) (quoting *Belasco Theatre Corp. v. Jelin Prods., Inc.*, 270 A.D. 202, 59 N.Y.S.2d 42, 45 (1st Dep't 1945)). Moreover, the advocate of the trade usage must establish either that the party sought to be bound was aware of the custom, or that the custom's existence was "so notorious" that it should have been aware of it. *Reuters Ltd. v. Dow Jones Telerate, Inc.*, 231 A.D.2d 337, 662 N.Y.S.2d 450, 454 (1st Dep't 1997). The trade usage must be "so well settled, so uniformly acted upon, and so long continued as to raise a fair presumption that it was known to both contracting parties and that they contracted in reference thereto." *Id.* (internal quotation marks and citation omitted).

■ BIIC submitted two affidavits in support of its allegation of a trade usage. William N. Edwards, a supervisor and manager in the claims department of the American Re–Insurance Company ("American Re") from 1974 until 1983, testified that: he was "not aware of American Re ever refusing to pay its share of declaratory judgment expenses ceded to it by its reinsureds"; he "never questioned whether declaratory judgment expenses should be treated differently than any other expenses submitted for payment by a cedent under American Re's reinsurance contracts"; and he was unaware prior to 1983 of anyone holding a contrary view. The practice of one company, however, is generally insufficient to establish a trade usage. *See, e.g., Encyclopedia Britannica, Inc. v. S.S. Hong Kong Producer*, 422 F.2d 7, 17–18 (2d Cir.1969); *H & W Indus., Inc. v. Occidental Chem. Corp.*, 911 F.2d 1118, 1122 (5th Cir.1990).

William Gilmartin, who has 51 years of experience in the insurance and reinsurance industries, affirmed that between 1976 and 1983, "[i]t was the custom and practice for reinsurers to pay [their reinsureds' declaratory judgment] expenses due to the common interest they shared with their reinsureds arising from the defense or prosecution of a declaratory action." Gilmartin did not aver, however, that these (unnamed) reinsurers always and invariably paid these costs, *see, e.g., Hutner*, 734 F.2d at 900 (affidavit stating that a pricing formula is "often used" as a basis for the negotiation of a pricing term is insufficient to establish the omitted term), and his testimony can be read to say that the payments were made *ex gratia* when reinsurers believed that the coverage litigations advanced the common interest, but not otherwise. Moreover, neither expert testified that any of the reinsurance certificates issued by other reinsurers contained language like the facultative certificates at issue here.

BIIC also failed to adduce evidence that Seguros either actually knew of the alleged custom, or that the practice of reinsurers' paying declaratory judgment expenses was "so notorious" in the industry that Seguros must have been aware of it. *See Reuters Ltd.*, 662 N.Y.S.2d at 454. The Edwards and Gilmartin affidavits make no allegation of actual or constructive knowledge on the part of Seguros, or on the part of all reinsurers in the industry. Similarly, there is no evidence that BIIC itself was aware of the alleged industry custom. Thus BIIC's submissions fail "to raise a fair presumption that [the alleged industry custom] was known to both contracting parties and that they contracted in reference thereto." *Id.* (internal quotation marks and citation omitted).[6]

**6.** By resolving the issue on this ground, we  have no need to consider Seguros' argument

## III

■ Finally, BIIC contends that Seguros owes its pro rata share of BIIC's declaratory judgment expenses by operation of the follow-the-fortunes doctrine. That doctrine binds a reinsurer to accept the cedent's good faith decisions on all things concerning the underlying insurance terms and claims against the underlying insured: coverage, tactics, lawsuits, compromise, resistance or capitulation. "Under the 'follow the fortunes' doctrine, a reinsurer is required to indemnify for payments reasonably within the terms of the original policy, even if technically not covered by it. A reinsurer cannot second guess the good faith liability determinations made by its reinsured ...." *Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 280 (2d Cir.1992) (internal citation omitted).

Because the doctrine "simply requires payment where the cedent's good-faith payment [to its insured] is at least *arguably within the scope of the insurance coverage that was reinsured,*" *Mentor Ins. Co. (U.K.) v. Brannkasse*, 996 F.2d 506, 517 (2d Cir.1993) (emphasis added), BIIC's invocation of the doctrine required a showing that its own declaratory judgment expense in litigating against its policyholders is potentially within the coverage of the underlying policies. This cannot be done. The policyholders obtained no benefit from the mounting of coverage litigation against their own claims; such an initiative cannot be conceived as any part of the policyholders' coverage; on the whole, any policyholder would prefer that the insurer forgo the contest. The expenses claimed by BIIC are substantial, but on this record and under these facultative certificates, they are not an aspect of coverage owed to the policyholder or a claim against the

---

that adding a term to the certificate requiring the payment of declaratory judgment ex-

reinsurer; they are among the claims-handling expenses that an insurance company incurs in the conduct of its own operations.

## CONCLUSION

The judgment is affirmed.

---

penses would vary and alter the express terms of the reinsurance contract.