**AXA CORPORATE SOLUTIONS INSURANCE COMPANY, formerly known as AXA Global Risks, U.S. Insurance Company, formerly known as Colonia Insurance Company; and First Indemnity of America Insurance Company, Plaintiffs–Appellants,**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY, Defendant–Appellee.**

No. 06–2923–cv.

United States Court of Appeals, Second Circuit.

July 11, 2007.

Michael R. Strauss, Hollander & Strauss, LLP, Great Neck, NY, for Plaintiffs–Appellants.

Gary Strong, Dreifuss, Bonacci & Parker, LLP, New York, NY, for Defendant–Appellee.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

Plaintiffs-appellants AXA Corporate Solutions Insurance Company and First Indemnity of America Insurance Company ("FIA") appeal from two orders of the

United States District Court for the Southern District of New York (Deborah A. Batts, *Judge* ), respectively dated July 13, 2005, 2005 WL 1649045, and May 25, 2006, 2006 WL 1458306, and the ensuing final judgment, dated May 26, 2006. These orders granted defendant's motions to dismiss the Amended Complaint and Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and the judgment closed the case. We assume the parties' familiarity with the balance of the facts, procedural history, and issues on appeal.

"We review de novo a district court's dismissal of a complaint under Fed. R.Civ.P. 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 115–16 (2d Cir.2007) (per curiam). "[W]e limit our consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans Inc.*, 421 F.3d 96, 100 (2d Cir.2005). We uphold a . dismissal "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir.2006) (internal quotation marks omitted).

Because Co–Sureties 142 and 146 are ambiguous, the District Court erroneously dismissed AXA's breach of contract claims, which were originally set forth in Counts I and II of the Amended Complaint and later in Counts V and VI of the Second Amended Complaint. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 178 (2d Cir.2004) ("[I]f a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim."). Viewed from the perspective of one "who is cognizant of the customs, practices, usages and terminology as generally understood in the [reinsurance] business," Co–Sureties 142 and 146 are ambiguous in two ways. *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 82 (2d Cir.2003) (internal quotation marks omitted).

■ First, the documents are ambiguous as to whether they create a reinsurance obligation. Reinsurance contracts were "traditionally accomplished by the ceding company or its broker preparing a slip with brief details of the risk to be placed; the slip was then taken to prospective reinsurers who, if prepared to accept, initialed it, indicating the proportion of the risk they wanted. Under normal circumstances, the initialing of the slip constituted a binding agreement." *Sumitomo Marine & Fire Ins. Co.–U.S. Branch v. Cologne Reins. Co.*, 75 N.Y.2d 295, 302, 552 N.Y.S.2d 891, 552 N.E.2d 139 (1990). "[I]ssuance ... of a formal certificate of reinsurance may not occur until much later, and indeed [is] technically unnecessary for a binding agreement." *Id.* Since Co–Sureties 142 and 146 contain the "brief details of the risk to be placed," the "proportion of risk" allegedly to be reinsured, allegedly were prepared by a "broker," and are "initialed" in the typical fashion, one could reasonably read them as binding slip agreements memorializing the parties' intent to enter into a reinsurance contract.

■ Second, Co–Sureties 142 and 146 are ambiguous as to whether an obligation exists between AXA and Defendant-appellee Lumbermens Mutual Casualty Company. While the documents do not explicitly reference AXA, they do reference (1) construction projects, (2) penal amounts, (3) principals, and (4) obligees that correspond exactly with the underlying bonds underwritten by AXA. Importantly, the documents list bond numbers that correspond with those for AXA's underlying bonds.

Further, a person familiar with the reinsurance industry would know that the use of brokers, such as AXA's alleged use of signatory FIA, is commonplace. *See Sumitomo Marine & Fire Ins. Co.*, 75 N.Y.2d at 302, 552 N.Y.S.2d 891, 552 N.E.2d 139; GRAYDON S. STARING, THE LAW OF REINSURANCE § 11:1 (2007) (noting that "much reinsurance is placed directly, but probably most is placed through brokers"). On that basis, one could reasonably infer that Lumbermens intended to reinsure a portion of AXA's risk on the underlying bonds.

■ The District Court also erroneously dismissed AXA's breach of implied indemnity claims, originally set forth in Counts III and IV of the Amended Complaint and reasserted in Counts I and II of the Second Amended Complaint. For the reasons already given, Co–Sureties 142 and 146 are ambiguous as to whether Lumbermens agreed to reinsure AXA. If Lumbermens did so agree, AXA would possess a right of indemnity because a reinsurance contract is a contract of indemnity. *See In the Matter of Midland Ins. Co.*, 79 N.Y.2d 253, 258, 582 N.Y.S.2d 58, 590 N.E.2d 1186 (1992).

■ In addition, the District Court erred in dismissing AXA's reformation claims pled in Counts III and IV of the Second Amended Complaint. The District Court's reasoning on this point—that a mistake in contract formation between AXA and Lumbermens was "incredible"—was speculative and thus improper on a motion to dismiss. *See generally Moore v. PaineWebber, Inc.*, 189 F.3d 165, 171 (2d Cir.1999) (noting that on a motion to dismiss, the court must not "speculate as to the likelihood" that a party will be able to adduce facts necessary to prove its case). Further, given the reinsurance industry's "swift, seemingly almost casual process of contract formation," mistakes may occur even between experienced partners.

*Sumitomo Marine & Fire Ins. Co.*, 75 N.Y.2d at 302, 552 N.Y.S.2d 891, 552 N.E.2d 139.

■ For similar reasons, the District Court erred in dismissing FIA's claims. The District Court improperly dismissed FIA's breach of contract claims, set forth in Counts V and VI of the Second Amended Complaint, because the ambiguous documents could represent a binding reinsurance obligation between FIA and Lumbermens. After all, FIA is listed as a party.

In addition, since reinsurance is a relationship of indemnity, the District Court improperly dismissed FIA's implied indemnity claims, asserted in Counts I and II of the Second Amended Complaint. Further, the District Court erred by dismissing on speculative grounds FIA's reformation claims, pled in Counts III and IV of the Second Amended Complaint.

■ Finally, we note that res judicata did not bar plaintiffs from asserting contract-related claims in the Second Amended Complaint. Since the District Court erroneously dismissed the breach of contract claims in the Amended Complaint, that dismissal could have no preclusive effect. *See generally Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir.1996) (holding that preclusive effect attaches to only those portions of a judgment that are affirmed on appeal).

For the foregoing reasons, the judgment of the District Court is VACATED and REMANDED for further proceedings not inconsistent with this decision.