■ J.P. MORGAN INVESTMENT MANAGEMENT INC. et al., Counterclaim Defendants-Appellants, v AMCASH GROUP, LLC, et al., Counterclaim Plaintiffs-Respondents. [966 NYS2d 23]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered November 9, 2012, which, insofar as appealed from, denied plaintiffs' motion for summary judgment on their declaratory relief claim, and denied their motion for summary judgment dismissing defendants' first and second counterclaims, unanimously reversed, on the law, with costs, the motion granted, and it is declared that the JPMorgan current yield money market mutual fund is not a "Current Yield ETF" within the meaning of the termination agreement and therefore defendants are not entitled to any termination agreement payments relating to the fund.

Pursuant to the termination agreement, plaintiffs were obligated to make payments to defendants in the event plaintiffs served as an investment advisor to a "Current Yield ETF," which, as defined in a prior asset purchase agreement, requires, among other things, that a covered fund has shares "listed on an organized securities market."

Summary judgment granting the requested declaration and dismissing the counterclaims should have been granted. Although the phrase "listed on an organized securities market" is not defined in the relevant agreements, summary judgment may be granted where, as here (1) there is no question as to the credibility of the extrinsic evidence, which is of such a definitive nature as to establish, as a matter of law, the meaning of that term to the industry (*see e.g. Dorel Steel Erection Corp. v Seaboard Sur. Co.*, 291 AD2d 309, 309 [1st Dept 2002]; *see also NFL Enters. LLC v Comcast Cable Communications, LLC*, 51 AD3d 52, 58 [1st Dept 2008]); (2) it has been shown either that the parties are actually aware of the established usage of the term, or that "the usage in the business to which the transaction relates is so notorious that a person of ordinary prudence in the exercise of reasonable care would be aware of it" (*Matter of Reuters Ltd. v Dow Jones Telerate*, 231 AD2d 337, 343 [1st Dept 1997]); and (3) there is no question that the intention of the parties was to follow, rather than depart from, the particu-

lar industry custom at issue (*see Executive Off. Network v 666 Fifth Ave. Ltd. Partnership*, 294 AD2d 166, 168 [1st Dept 2002]).

Here, definitive extrinsic evidence of industry custom and usage establishes, as a matter of law, that plaintiffs' fund does not fall within the meaning of the phrase "listed on an organized securities market," which requires that a covered fund's shares have been accepted for trading by an organized securities market or exchange. No reasonable party in the investment industry would consider the mere "informational listing" of a fund's day-end, per-share net asset value data on certain electronic trading sites as satisfying the requirement, even assuming those sites themselves could qualify as organized securities markets, which is the only manner in which the shares of plaintiffs' fund are allegedly "listed." Concur—Mazzarelli, J.P., Sweeny, Freedman and Gische, JJ.