**GUARDIAN MUSIC CORPORATION,**
Plaintiff–Appellant–Cross–
Appellee,

v.

**JAMES W. GUERCIO ENTERPRISES,**
**INC., Defendant–Appellee–Cross–**
**Appellant.**

Nos. 06–4221–cv (L), 06–4432–cv(XAP).

United States Court of Appeals,
Second Circuit.

April 1, 2008.

Steven Ames Brown, San Francisco, CA, for Plaintiff–Appellant–Cross–Appellee.

Helene M. Freeman, Dorsey & Whitney LLP, New York, NY, for Defendant–Appellee–Cross–Appellant.

PRESENT: Hon. B.D. PARKER, Hon. DEBRA ANN LIVINGSTON, Circuit Judges, Hon. JANET C. HALL,[1] District Judge.

### SUMMARY ORDER

We assume the parties' familiarity with the underlying facts and procedural history of this case. Guardian Music Corporation ("Guardian") appeals from an August 9, 2006 judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*). James W. Guercio Enterprises ("Guercio") cross-appeals from the same judgment.

In February 1969, Louis "Moondog" Hardin, a blind avant-garde composer, conveyed the right to copyright his compositions to Skiff Music Corporation

---

1. The Honorable Janet C. Hall, of the United States District Court for the District of Connecticut, sitting by designation.

("Skiff"), the purported predecessor to Guardian. That same year, Skiff entered into a Co–Publishing Agreement with Archimedes Music, a division of Guercio, under which Skiff would administer the copyrights to four of Hardin's compositions (the "Split Compositions"), Archimedes would administer the copyrights to thirty of Hardin's compositions (the "Participating Compositions"), and Skiff and Archimedes would each be entitled to half of the publisher's income generated by any of the compositions. The Agreement encompassed two groups of Hardin's works, referred to as the 1969 and 1971 compositions.

On December 31, 1997, the original term of the copyright to Hardin's 1969 works expired. *See* 17 U.S.C. § 304(a)(1)(A) (setting forth a twenty-eight-year original term for certain copyrights). In Spring 1999, a hip-hop musician named "Mr. Scruff" sampled, without authorization, Hardin's 1969 work "Lament" in his song "Get a Move On." An individual named Don Williams, who had been administering the Hardin compositions on behalf of Archimedes, obtained a fifty percent interest in the copyright for "Get a Move On." Hardin died in September 1999, bequeathing his copyrights to his heir, Illona Goebel Sommer.

In 2003, Guardian sued for an accounting of the profits from the 1969 and 1971 compositions, and a constructive trust on Guardian's interest in those compositions. Guardian appeals the ruling of the district court that it is not entitled to profits from the renewal term of the 1969 copyrights. (The renewal term of the 1969 compositions vested on January 1, 1998.) Guercio cross-appeals from the district court's denial of summary judgment to Guercio on Guardian's claim to the original term profits from both groups of compositions.

"We review de novo a district court's ruling on cross-motions for summary judgment, in each case construing the evidence in the light most favorable to the non-moving party." *White River Amusement Pub, Inc. v. Town of Hartford,* 481 F.3d 163, 167 (2d Cir.2007). The renewal term of a copyright "is not merely an extension of the original copyright term but a new estate ... clear of all rights, interests or licenses granted under the original copyright." *P.C. Films Corp. v. MGM/UA Home Video Inc.,* 138 F.3d 453, 456–57 (2d Cir.1998) (internal quotation marks omitted); *see also* 17 U.S.C. §§ 304(a)(2)(B)(ii), 304(a)(3)(B). If the author of the copyrighted work is alive when the renewal term vests, he or she is entitled to the renewal rights, even if the rights to the original term had been conveyed to another party. 17 U.S.C. § 304(a)(1)(C)(i). An author can convey his or her entitlement to a renewal term, but there is "a presumption against the conveyance of renewal rights." *P.C. Films Corp.,* 138 F.3d at 457. This presumption may be rebutted only "where the author includes language which expressly grants rights in renewals of copyright or extensions of copyright." *Id.* (internal quotation marks omitted). Where a contract includes "general words of assignment," such as "forever," "hereafter," or "perpetually," these words can convey renewal rights if the parties had so intended. *Id.* (internal quotation marks omitted).

■ The district court correctly dismissed Guardian's claim to renewal term profits from Hardin's 1969 compositions. Guardian contends that Hardin conveyed his renewal rights to Skiff and Archimedes in the 1969 Co–Publishing Agreement, but the Agreement does not contain language that expressly grants those rights, nor does it include "general words of assignment" that would suggest any such grant. The Agreement provides that "[t]he rights of the parties [Skiff and Archimedes] hereto in and to the [Split and Participating]

Compositions shall extend for the term of the copyright of the [Split and Participating] Compositions and any extensions or renewals thereof if same become available." We do not agree with Guardian that this language is ambiguous; rather, it clearly indicates that the terms of the Co–Publishing Agreement would apply *if, at some point in the future,* Hardin decided to convey his rights to any extensions or renewals of the copyright to Skiff and/or Archimedes. Neither does Hardin appear even to have been a party to the Agreement. We find that the terms of the Co–Publishing Agreement are clear, that nothing in the Agreement overcomes the "strong presumption against conveyance of renewal rights," and that we have no reason to consult extrinsic evidence of the intent of the parties. *See, e.g., Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir.1998) ("If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence.").

Guardian argues in the alternative that, regardless of whether Hardin intended to convey his renewal rights in the Co–Publishing Agreement, Archimedes actually administered at least one composition in the renewal term: "Lament." According to Guardian, some renewal term right had become "available" to Archimedes, and Archimedes was therefore required to share any resulting profits with Guardian. This argument also fails. The record indicates that Guercio never claimed, nor was granted, any entitlement to the renewal rights in the 1969 compositions, which had passed back to Hardin and then to his heir upon his death. Therefore, there were no renewal rights to share with Guardian under the Co–Publishing Agreement.

The district court also correctly denied summary judgment to Guercio on Guardian's claim to a share of profits from the original terms of the disputed copyrights. We agree that a genuine issue of material fact precluded judgment on Guercio's theory that Guardian had materially breached the Agreement. Finally, Guercio argues that it has no obligations to Guardian under the Co–Publishing Agreement because that Agreement was executed between Skiff and Guercio, and Guercio never agreed to any assignment of Skiff's rights and obligations under the Agreement to Guardian. Guercio has not met its burden of convincing us on this appeal that it is entitled to judgment as a matter of law on this issue. Further, remand to the district court to reconsider this argument would not be warranted as the parties have already stipulated to the entry of a final judgment in favor of Guardian and against Guercio.

For the foregoing reasons, the judgment of the district court is AFFIRMED.